UNITED STATES of America

v.

Louis A. EHRLICH et al.

Civ. No. 736.

United States District Court
S. D. Georgia, Augusta Division.

Nov. 30, 1956.

William C. Calhoun, U. S. Atty., Augusta, Ga., for the United States.

William P. Congdon of Congdon & Leonard, Augusta, Ga., for defendant Louis Ehrlich.

SCARLETT, District Judge.

The above-stated case was brought by the United States of America against Louis Ehrlich, et al., to recover the following designated parcels of land:

Lot 8, 1263 Holden Court, Oglethorpe Homes, Augusta, Georgia;

Lot 10, 1259 Holden Court, Oglethorpe Homes, Augusta, Georgia;

Lot 13, 1247–49 Holden Court, Oglethorpe Homes, Augusta, Georgia;

Lot 17, 1237–39 Holden Drive, Oglethorpe Homes, Augusta, Georgia;

Lot 26, 1213–15 Holden Drive, Oglethorpe Homes, Augusta, Georgia; and

Lot 44, 1236 Holden Drive, Oglethorpe Homes, Augusta, Georgia,

which were conveyed to Robert A. Hambrick, George A. Buck, Sr., Raymond A. Eades, Sherwood C. Lindsey, Robert D. Jarvis and John W. Wren, Jr., by the Public Housing Administration on or about December 2, 1954, pursuant to the terms of the Lanham Act, 42 U.S.C.A. § 1521 et seq., on the grounds that Louis Ehrlich and the other designated defendants entered into a fraudulent scheme in that Louis Ehrlich, a non-veteran or serviceman, obtained title to the above-described property at a preferential price given to veterans and servicemen under the Lanham Act.

The Georgia Railroad Bank and Trust Company was named a party defendant in this action in view of its holding a deed to secure debt, covering the subject parcels of land, executed by the defendant Ehrlich. The Georgia Railroad Bank and Trust Company and Louis Ehrlich filed a motion to dismiss the complaint upon jurisdictional grounds and because the United States of America made no offer of restitution of the purchase price of the property, which were overruled by the Court. Upon a subsequent cancellation of its security deed covering the hereinabove described property, and with consent of all parties, the Georgia

Railroad Bank and Trust Company was dismissed as a party defendant.

The defendants Louis Ehrlich, Robert A. Hambrick and John W. Wren, Jr., filed answers denying the allegation of their participation in a fraudulent scheme to obtain title to the above-described property and the other defendants filed no response to the complaint.

Upon the pleadings and the evidence adduced at the trial of the case to the Court without a jury, with consent of all parties, on June 11, 1956, the Court makes the following:

### Findings of Fact

1. In October, 1954, the Oglethorpe Homes Subdivision, consisting of 31 single units and 22 duplex units, totalling 75 dwelling units, in Augusta, Georgia, owned by the Public Housing Administration, an agency of the United States, were offered for sale by individual parcels for owner-occupancy, under the provisions of the Lanham Act, as amended by the Revercomb Act, which granted priorities and price advantages to veterans and servicemen. The price advantages as to the particular lots herein involved are:

| | Priority Purchase Price | Price to Non-Veterans and Non-Servicemen |
|---|---|---|
| Lot 8—1263 Holden Court | $3,260. | $4,200. |
| Lot 10—1259 Holden Court | 3,260. | 4,200. |
| Lot 13—1247-49 Holden Court | 5,550. | 7,150. |
| Lot 17—1237-39 Holden Drive | 6,520. | 8,400. |
| Lot 26—1213-15 Holden Drive | 5,550. | 7,150. |
| Lot 44—1236 Holden Drive | 3,140. | 4,050. |

2. The Public Housing Administration received many more applications than there were housing units in the Oglethorpe Homes Subdivision from various individuals who were qualified under the provisions of the Lanham Act. On December 1, 1954, the night before the various units in Oglethorpe Homes were to be sold, numerous people who were eligible to purchase homes under the Lanham Act, stayed in line all night at the local office of the Public Housing Administration in Augusta, Georgia, endeavoring to purchase units for owner-occupancy, but were unable to do so because the Public Housing Administration had received applications in excess of the units for sale.

3. On or about October 26, 1954, Louis Ehrlich went to Atlanta, Georgia and had a conference with R. E. Bates, Assistant Director of Management and Disposition, Atlanta Field Office Public Housing Administration, Carl H. Johnston, Chief of the Disposition of the Public Housing Administration, R. E. Pitt, Assistant Realty Officer, Public Housing Administration, and William B. Fudger, Attorney for the Public Housing Administration, and discussed with them his eligibility to directly purchase units in the Oglethorpe Homes, which were to be sold under the provisions of the Lanham Act, and the possibility of his financing the purchase of units in Oglethorpe Homes of veterans and servicemen who were unable to accept the finance plan offered by the Public Housing Administration. Ehrlich was then informed that he was not eligible to purchase units himself, as he did not qualify under the terms of the Lanham Act, but there would be no objections to his entering into any legitimate finance plan with qualified purchasers who were unable to utilize the finance plan offered by the Government. At this conference Ehrlich was informed by William B. Fudger that in the event he purchased units in Oglethorpe Homes, criminal prosecution would be recommended. At no time during this meeting was a request made by any official of the Public Housing Administration to Ehrlich that he assist any veteran or serviceman in financing the purchase of a unit in the Oglethorpe Homes.

4. The defendant Ehrlich devised the scheme of fraudulently and illegally acquiring for himself the subject parcels of land in the Oglethorpe Homes by utilizing for himself the preferences available to veterans. This he perpetrated by

two methods; the "straw-man" purchase; the ruse of a purported financing arrangement with indigent veterans or servicemen having the requisite priority and residing on the property to the end that actual title to the property would result in him.

5. The defendant Ehrlich took the initiative in making a general solicitation of the Oglethorpe Homes residents seeking opportunities of putting such a scheme into effect. During the latter part of November, 1954, Mr. and Mrs. Julian P. Arnold, who were at that time residents of the Oglethorpe Homes Subdivision and were qualified to purchase a housing unit in said subdivision under the Lanham Act, were contacted by defendant Louis Ehrlich, and asked if they were going to utilize their priority and purchase a unit in the Oglethorpe Homes for owner-occupancy. When informed by the Arnolds that they were not interested in exercising their priority, Ehrlich offered to finance the purchase of a dwelling unit for the Arnolds at the price offered to veterans and servicemen, provided they would convey title to same to Ehrlich immediately, with the condition that they pay the same rent for a period of 7 months that they had paid to the Public Housing Administration, and at the expiration of that period they could repurchase the unit from Ehrlich at the price given to non-veterans and non-servicemen under the Lanham Act, which was $1,080 more than the price offered to veterans and servicemen. This offer was refused by the Arnolds and shortly thereafter Ehrlich came to the Arnolds' home and stated that he would give the Arnolds $200 to act as a "straw-purchaser", in that Ehrlich would put up the entire serviceman's purchase for a housing unit provided that they immediately convey him title to the property after receiving a deed from the Public Housing Administration. The Arnolds accepted this proposal and, pursuant to said agreement, Ehrlich advanced $100 as a down payment which was forwarded to the Public Housing Administration with the Arnolds' application for a unit designated

as 1715 Central Avenue. Subsequently, Public Housing Administration notified the Arnolds that their offer to purchase was accepted and, after examining the premises, they decided to keep the unit for their own use. The Arnolds then notified defendant Ehrlich of their decision and offered to return the $100 advanced by him, but said offer was refused by Ehrlich on the ground that they had made a valid and binding contract with him. Subsequently, the Arnolds purchased the unit specified in the application and financed the same under the Government finance plan without any aid whatsoever from Ehrlich.

6. In November, 1954, Robert D. Jarvis, having the requisite priority as a serviceman stationed at Camp Gordon and a resident of Oglethorpe Homes, was approached by defendant Louis Ehrlich and asked if he was going to exercise his priority to purchase a unit in the Oglethorpe Homes. When informed of Jarvis' decision not to exercise his priority, Ehrlich offered Jarvis $100 to act as a "straw-man" and purchase a unit in the subdivision with money supplied by Ehrlich, provided that Jarvis would immediately convey the property to Ehrlich upon his receipt of a deed from the Government. This offer was accepted by Jarvis and, pursuant to said scheme, he submitted an application to the Public Housing Administration for a unit designated as 1213–15 Holden Drive and immediately after obtaining title from the Public Housing Administration, on December 2, 1954, Jarvis conveyed the property to Ehrlich upon receiving $100 in cash.

7. In November, 1954, Raymond A. Eades, having the requisite priority as a serviceman stationed at Camp Gordon and a resident of Oglethorpe Homes, was approached by defendant Louis Ehrlich and asked if he was going to exercise his priority to purchase a unit in the Oglethorpe Homes. When informed of Eades' decision not to exercise his priority, Ehrlich offered Eades $100 to act as a "straw-man" and purchase a unit in the subdivision with money supplied by

Ehrlich, provided that Eades would immediately convey the property to Ehrlich, upon his receipt of a deed from the Government. This offer was accepted by Eades and, pursuant to said scheme, he submitted an application to the Public Housing Administration for a unit designated as 1247–1249 Holden Court and immediately after obtaining title from the Public Housing Administration, on December 2, 1954, Eades conveyed the property to Ehrlich upon receiving $100 in cash.

8. During November, 1954, Robert A. Hambrick, George A. Buck, Sr., Sherwood C. Lindsey and John W. Wren, Jr. were servicemen or veterans and occupants in the Oglethorpe Homes Subdivision. At this time they were contacted by Louis Ehrlich, who informed them that he had been requested by officials of the Public Housing Administration to aid them in financing the purchase of a unit in the Oglethorpe Homes. The aforesaid occupants advised Louis Ehrlich that they were financially unable to enter into the financial plan submitted by the Public Housing Administration, whereupon Ehrlich offered them a proposition in which he would pay the entire servicemen's purchase price for units in Oglethorpe Homes, provided that they would immediately convey the legal title to the property to him upon receipt of a deed from the Government. Pursuant to this proposition, the aforesaid occupants and Ehrlich entered into an option agreement in which the aforesaid occupants would have the right to occupy the premises for 7 months at the rental previously paid to the Public Housing Administration and at the expiration of the 7 months period would have the right to repurchase the same from Ehrlich at the non-serviceman's and the non-veteran's price, plus the cost of any remodelling done on these premises by Ehrlich during the interval at the request of the occupants.

9. Louis Ehrlich executed a security deed to the Georgia Railroad Bank and Trust Company on December 1, 1954, covering the lots hereinabove described, in the amount of $25,500, before he had obtained title from Robert A. Hambrick, George A. Buck, Sr., Raymond A. Eades, Sherwood C. Lindsey, Robert D. Jarvis and John W. Wren, Jr.

10. The peculiar financing arrangements employed by the defendant Ehrlich was actually only the means to the end that he acquired title to lots 8, 10, 17 and 44, involved in this action, utilizing the veterans' preferences of the defendants Robert A. Hambrick, George A. Buck, Sr., Sherwood C. Lindsey and John W. Wren, Jr. The method of his execution of his purported agreement to reconvey the involved property raises serious doubt as to its genuineness and effectiveness. Moreover the terms of such a proposal, more to the substantial profit of Ehrlich, are most uninviting to final execution of the purported options by the indigent veteran, whose financial condition must necessarily be greatly improved since the initial action between the veteran and Ehrlich. This is further demonstrated by the fact that defendant Ehrlich, anticipating his acquisition of these lots pursuant to his scheme, pledged the particular lots to the Georgia Railroad Bank and Trust Company under a deed to secure debt executed by him in favor of that bank before the subject lots were actually conveyed by the Public Housing Authority to the veterans participating in the scheme. According to the scheme the defendant Ehrlich furnished the money necessary for the purchase of the property from the Public Housing Administration. These funds were obtained by him through the loan of the Georgia Railroad Bank and Trust Company secured by the above mentioned deed to secure debt.

### Conclusions of Law

1. The defendant Louis Ehrlich now holds title to the premises located in the City of Augusta, Richmond County, Georgia designated herein as:

Lot 8, 1263 Holden Court;

Lot 10, 1259 Holden Court;

Lot 13, 1247–49 Holden Court;

Lot 17, 1237–39 Holden Drive;

Lot 26, 1213–15 Holden Drive; and Lot 44, 1236 Holden Drive, through fraud and contrary to statute providing for the disposition of said property by the United States of America through the Public Housing Administration; having caused the conveyance out of the United States of America and obtaining the title to said premises into the defendant Ehrlich by fraudulent scheme and device entered into and perpetrated by the defendants Louis Ehrlich, Robert A. Hambrick, George A. Buck, Sr., Raymond A. Eades, Sherwood C. Lindsey, Robert D. Jarvis and John W. Wren, Jr.

2. The United States of America is entitled to recover the lots described in the above paragraph, without making restitution of the purchase price and Louis Ehrlich should be directed to pay to the United States of America the total amount of rent derived from said property since December 2, 1954 and the cost of this action.

An appropriate order will be entered granting the relief asked for in plaintiff's complaint.